IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNAMALAI ANNAMALAI, #56820-379, a/k/a Swamiji Sri Selvam Siddhar, and PARVATHI SIVANADIYAN,<br><br>Plaintiff,<br><br>vs.<br><br>JACQUELINE H. REYNOLDS,<br>NATHAN RAVICHANDRAN,<br>VISWANATHAN LAKSHMANAN,[1]<br>RICKY GREEN,<br>RHONDA GREEN,<br>R.W. GREEN FAMILY PARTNERSHIP, LP,<br>NAVAREE ROBBINS PARTNERSHIP,<br>USA,<br>INTERNAL REVENUE SERVICE,<br>and JOHN & DOE 1-20<br><br>Defendants. | Case No. 23-cv-01210-JPG |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Annamalai Annamalai, an inmate in the custody of the Federal Bureau of Prisons and currently housed at the United States Penitentiary in Thomson, Illinois (USP-Thomson), brings this civil action with Co-Plaintiff Parvathi Sivanadiyan[2] for claims stemming from Annamalai's criminal prosecution and forfeiture proceedings in the Northern District of Georgia in *United States v. Annamalai*, No. 13-cr-437-TCB-CMS (N.D. Ga.). Annamalai was originally convicted on 34 counts of conspiracy to commit bank fraud, bank fraud, filing a false income tax return, making a false statement, obstruction of justice and making a false statement in a

---

[1] The parties refer to this defendant interchangeably as "Lakshmanan" and "Laksmanan."
[2] Parvathi Sivanadiyan filed a Motion to Withdraw (Doc. 12) as a plaintiff, which shall be **GRANTED**. The Court will refer to Annamalai as the only plaintiff henceforth.

1

bankruptcy proceeding, among other crimes.  *Id*.  The claims in this case arise from 22 counts that were vacated on appeal.  *See United States v. Annamalai*, 939 F.3d 1216, 1221 (11th Cir. 2019) (reversing convictions for bankruptcy fraud, conspiracy to commit bankruptcy fraud, and money laundering linked to the underlying unlawful activity of bankruptcy fraud, and conspiracy to harbor a fugitive).  *See also United States v. Annamalai*, No. 21-13002, 2023 WL 316019, at *2 (11th Cir. Jan. 19, 2023) (affirming 216-month sentence following resentencing).

In the Complaint, Annamalai alleges that his prosecution in the Northern District of Georgia was orchestrated by government and private actors to violate his religious rights, among other things.  He asserts claims against the United States, Internal Revenue Service (IRS), former IRS Agent Reynolds of Georgia, Nathan Ravichandran of India, Viswanthan Laksmanan of India and/or Georgia, Ricky and Rhonda Green of Texas, R.W. Green Partnership of Texas, and Navaree Robbins Partnership of Texas for violations of Illinois and federal law.  (Doc. 1-1, p. 4).

Annamalai filed the Complaint in the Circuit Court of the First Judicial Circuit in Williamson County, Illinois.  *See Annamalai, et al. v. IRS, et al.*, No. 2023-LA-25 (filed Mar. 15, 2023).  At the time, Annamalai was housed at the United States Penitentiary in Marion, Illinois (USP-Marion).[3]  On April 12, 2023, Defendants United States and IRS removed the case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  (Docs. 1 and 1-1).  They also filed a Motion to Stay proceedings pending preliminary review of this matter and, while the motion was pending, sought dismissal of this action under the doctrine of derivative jurisdiction.  (Docs. 3 and 25).  As discussed below, the Court finds that removal was proper, but the doctrine of derivative jurisdiction creates a procedural defect in removal that warrants dismissal of this action without prejudice.

---

[3] On May 8, 2023, Annamalai notified the Court that his address changed to USP-Thomson.  (Doc. 20).

## The Complaint

The Complaint sets forth the following allegations (Doc. 1-1, pp. 1-49): Annamalai is a Hindu High Priest who operated the Hindu Temple and Community Center of Georgia where he had millions of "faithful followers." Annamalai allegedly contributed over $3 million in personal funds to the religious nonprofit organization in Georgia, and his monastery contributed over $1.4 billion to various public causes in the form of property, cash, jewelry, artifacts, paintings, statuary, and ancient palm containing "trade secrets" known only to Annamalai. He also invested personal funds in real estate in Georgia, California, Texas, and Ohio. When the Temple filed for bankruptcy following the 2008 financial crisis, the Trustee claimed that Annamalai and his wife committed a fraud on the bankruptcy court through fraudulent asset transfers.

In November 2013, Annamalai was indicted in the United States District Court for the Northern District of Georgia. Annamalai now claims that his real properties, religious statuary, and trade secrets were wrongfully seized and/or forfeited in the criminal proceedings based on statements made by former IRS Agent Jacqueline H. Reynolds. These statements also resulted in his conviction on 34 counts of criminal activity, 22 of which were ultimately vacated. *See United States v. Annamalai*, 939 F.3d 1216, 1221 (11th Cir. 2019). Reynolds allegedly "orchestrated the entire 22 counts of vacated criminal convictions" against Annamalai. (Doc. 1-1, p. 8). And, the Trustee resorted to extortion and blackmail of Annamalai and his wife, ultimately subjecting them to criminal forfeitures of approximately $7.23 billion (without interest). (*Id*. at 12). Numerous properties (including religious temples) founded by them and held in their names in California, Ohio, Texas, and Georgia were looted, misappropriated, sold, or transferred to Reynolds' friends or privies, resulting in the "collapse" of the religious organizations. (*Id*. at 17-19).

Meanwhile, Annamalai was incarcerated in the Communications Management Unit and Counter Terrorism Unit at USP-Marion, where he was targeted because of his religion by Muslim inmates who "hate[d] [him] like hell" and a white supremacist, William White, who allegedly inflicted life-threatening injuries in October 2021.[4]  (*Id*. at 23).  His wife and children have allegedly been threatened.  Annamalai blames Reynolds for all of this, in order to interfere with his religious rights and have him and his family killed.  He seeks $7.23 billion, or more, in compensatory damages from the United States, IRS, Agent Reynolds, and various individuals and entities affiliated with her.  (*Id*.).

Annamalai sets forth the following claims in the *pro se* Complaint:

**Count 1:**  Religious Freedom Restoration Act claim against Reynolds, IRS, United States, and Doe Defendants.

**Count 2:**  Federal Tort Claims Act claim against the United States for property loss resulting from criminal forfeiture proceedings under 28 U.S.C. § 1346(b) and 28 U.S.C. § 2674, *et seq*.

**Count 3:**  Illinois and Federal Racketeer Influenced Corrupt Organization Act claims against Reynolds, Ravichandran, Lakshmanan, Mr. Green, Ms. Green, Green Partnership, Navaree Partnership, and Doe Defendants.

**Count 4:**  Illinois Racketeer Influenced Corrupt Organization Act claims against Reynolds, Ravichandran, Lakshmanan, Mr. Green, Ms. Green, Green Partnership, Navaree Partnership, and Doe Defendants.

**Count 5:**  No claim listed.

**Count 6:**  No claim listed.

**Count 7:**  Eighth Amendment (*Bivens* claim) against Reynolds.

**Count 8:**  Illinois Human Rights Act claim pursuant to 735 ILCS § 5/8-101, *et seq*.

**Count 9:**  Illinois intentional infliction of emotional distress claim against no particular defendants.

---

[4] Annamalai filed one or more separate lawsuits to address these conditions. *See, e.g., Annamalai v. Sproul, et al.*, No. 22-cv-1541-JPG (S.D. Ill. filed July 15, 2022) (currently pending).

> Count 10: Illinois unjust enrichment claim against Reynolds, Ravichandran, Lakshmanan, Mr. Green, Ms. Green, Green Partnership, Navaree Partnership, and Doe Defendants.
>
> Count 11: Illinois abuse of process claim against Reynolds, Ravichandran, Lakshmanan, Mr. Green, Ms. Green, Green Partnership, Navaree Partnership, and Doe Defendants.
>
> Count 12: Illinois negligent infliction of emotional distress claim against undefined group of "government actors" and Lakshmanan.
>
> Count 13: Request for recognition and enforcement of state judgment in Vigo County, Illinois under the Full Faith and Credit Clause and 28 U.S.C. § 1738.

(*See* Doc. 1-1, pp. 1-49).

## Discussion

**A.     Removal**

Defendant United States and IRS removed the action to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) governs removal of actions against the United States or its officers sued in their individual or official capacity for acts under color of such office or in the performance of such duties. It states, in pertinent part:

> (a) A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

Section 1442 removal "creates an exception to the 'well-pleaded complaint' rule and allows removal that presents a federal question beyond the narrow confines of the complaint,

5

including a case in which an officer or agency can raise a 'colorable' federal defense." *Hammer v. United States Dep't of Health and Human Servs.*, 905 F.3d 517, 525 (7th Cir. 2018) (citations omitted). Section 1442 authorizes removal of any proceeding that meets the following criteria: (1) the proceeding must be a "civil action;" (2) the civil action must be "against or directed to" the removing party; (3) the removing party must be one of the entities listed; and (4) the civil action must be "for or relating to any act under color of such office." *Id*. at 525-26. The Supreme Court has construed this last element as requiring a "colorable" federal defense. *Id*. (citations omitted). Removal of this action by the United States and IRS meets these criteria because this is a civil action against the United States and IRS, among others, "for or relating to" acts "under color of such office" by these defendants (and IRS Agent Reynolds).

Removal to this federal court is also proper. Section 1442(a)(1) calls for removal to the federal court embracing the place where the civil action is pending. This action was originally filed in the Circuit Court for the First Judicial Circuit in Williamson County, Illinois. *See Annamalai, et al. v. IRS, et al.*, No. 2023-LA-25 (filed Mar. 15, 2023). Williamson County is located in this federal judicial district.

Although Annamalai objects to removal on the grounds that several defendants received no notice of removal and filed no consent to it (Doc. 19, pp. 2-3), Defendants United States and IRS could remove the entire action to federal court under § 1442(a)(1) even where the other defendants received no notice and did not consent. *Hobbs v. Shesky*, No. 22-cv-00680-PP, 2023 WL 2710250, at *6 (E.D. Wis. March 30, 2023) (citing *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (Section 1442(a) "allows a federal officer independently to remove a case to federal court even though the officer is only one of several named defendants."); *Vickroy v. A.W. Chesterton, Inc.,* No. 11-cv-00531-GPM, 2011 WL 4529467, at *1 (S.D. Ill. Sept. 28,

2011) (§ 1442 removal does not require all defendants' notification or consent). Removal is proper.

**B.     Derivative Jurisdiction**

Defendants argue that the doctrine of derivative jurisdiction operates as a mandatory procedural bar to the exercise of federal judicial power that cannot be cured with an amended complaint and warrants dismissal of the action without prejudice. (*See* Doc. 25). This doctrine provides that a federal court acquires no jurisdiction upon removal of an action where the state court lacked jurisdiction of the subject matter or the parties in the first place. *Ricci v. Salzman*, 976 F.3d 768, 771 (7th Cir. 2020); *Edwards v. United States Dept. of Justice*, 43 F.3d 312 (7th Cir. 1994); *Minnesota v. United States*, 305 U.S. 382, 389 (1939). Derivative jurisdiction represents a procedural bar to the federal court's exercise of federal judicial power. *Hammer v. United States Dep't of Health and Human Servs.*, 905 F.3d 517 (7th Cir. 2018). The "entire principle behind derivative jurisdiction is that the case was not 'properly constructed' because it was brought in the wrong forum." *Id*. at 535 (citing *Rodas v. Seidlin*, 656 F.3d 610, 619 (7th Cir. 2011)).

The state court lacked subject matter jurisdiction over the claims at issue in Counts 1, 2, 7, and 13. Plaintiff collaterally attacks his federal conviction, forfeiture judgments, and bankruptcy proceedings by bringing suit in Illinois state court against the United States, IRS, former IRS Agent Reynolds, and various citizens and/or corporations in Georgia, Texas, and India. He brings claims under federal statutory or constitutional law, including the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb – 2000bb-4 (Count 1), the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671-80 (Count 2), *Bivens* / Eighth Amendment (Count 7), and the Full Faith and Credit Clause and pursuant to 28 U.S.C. § 1738 (Count 13). Williamson County Circuit Court has no subject matter jurisdiction over any of these federal statutory and federal constitutional claims.

The state court also lacks personal jurisdiction over all other defendants named in conjunction with Plaintiffs' remaining Illinois state law claims in Counts 3, 4, 8, 9, 10, 11, and 12.[5] The known defendants are not identified as Illinois residents or connected to any business in the state. Annamalai specifically names Defendants IRS Agent Reynolds of Georgia, Nathan Ravichandran of India, Viswanthan Laksmanan of Georgia and/or India, Ricky and Rhonda Green of Texas, R.W. Green Partnership of Texas, and Navaree Robbins Partnership of Texas. (Doc. 1-1, p. 4).

Annamalai bears the burden of establishing a *prima facie* basis for exercising personal jurisdiction over each non-resident defendant. *Id*. (citation omitted). The Illinois long-arm statute governs personal jurisdiction in this context. *See* 735 ILCS § 5/2-209; *Aspen American Ins. Co. v. Interstate Warehousing, Inc*., 90 N.E.3d 440, 2017 IL 121281 (2017). Under § 5/2-209(c), the court may exercise jurisdiction on any "basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS § 5/2-209(c). There is no assertion that the Illinois Constitution places greater restraints on the exercise of jurisdiction than the U.S. Constitution. For this reason, the Court focuses on federal constitutional principles.

The United States Supreme Court has held that the federal due process clause allows a state court to exercise personal jurisdiction over a nonresident defendant only when the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Kinslow v. Pullara*, 538 F.3d 687, 691 (2008) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). More specifically:

> . . . the defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial

---

[5] Plaintiff omitted Counts 5 and 6 as claims in the Complaint.

> justice. Those contacts may not be fortuitous. Instead, the defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. Crucial to the minimum contacts analysis is a showing that the defendant should reasonably anticipate being haled into court in the forum state, because the defendant has purposefully availed itself of the privilege of conducting activities there.

*Kinslow*, 538 F.3d at 691 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (alterations, citations, internal quotation marks omitted)). Two categories of personal jurisdiction are at issue here: specific and general. Both are absent.

Specific jurisdiction "exists when the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state." *Aspen American Ins. Co.*, 90 N.E.3d at 444-45 (citations omitted). Under specific jurisdiction, a nonresident defendant may be subject to a forum state's jurisdiction based on certain "single or occasional acts" in the state but only with respect to matters pertaining to those specific acts. *Russell v. NFA*, 987 N.E.2d 778, 2013 IL 113909, ¶ 40 (2013). The Complaint contains no suggestion that the individual defendants had contacts with Illinois, and it would be fundamentally unfair to require them to submit to the state court's jurisdiction with respect to this particular litigation where no defendants availed themselves of the privileges of conducting activities in the forum state.

The Complaint describes conduct that occurred entirely outside of Illinois,[6] so the real question is whether general jurisdiction exists. Where general jurisdiction exists, "the plaintiff may pursue a claim against the defendant even if the conduct of the defendant that is being challenged occurred entirely outside the forum state." *Aspen American Ins. Co.*, 90 N.E.3d at 445. In the case of a foreign corporation, the federal due process clause allows a federal court to assert

---

[6] These activities include the criminal judgment, criminal forfeiture proceedings, bankruptcy proceedings, and transfer of property that occurred in Georgia, Texas, Ohio, and California and involved residents of Georgia, Texas, and India. (Doc. 1-1, pp. 1-49).

9

general jurisdiction over "a foreign corporation[ ] to hear any and all claims against [it] when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id*. (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  The Supreme Court explained that typical examples of a when a foreign corporation is "essentially at home" are the corporation's place of incorporation and its principal place of business.  *Id*. (citing *Daimler*, 571 U.S. at 138).  Plaintiffs have not shown that Green Partnership, Navaree Robbins Partnership, or any other defendants were essentially at home in Illinois.  The state court lacks personal jurisdiction over any defendants named in connection with Counts 3, 4, 8, 9, 10, 11, and 12.

Given the state court's absence of jurisdiction over the subject matter and parties, the doctrine of derivative jurisdiction operates as a procedural bar to the federal court's jurisdiction.  Annamalai cannot circumvent this bar by filing an amended complaint and invoking federal jurisdiction.  If Annamalai would like to pursue his claims in state or federal court, he must initiate a separate suit in the appropriate court.  This action shall be dismissed without prejudice.

However, Annamalai is hereby **WARNED** that this Court will not tolerate further abusive, malicious, or frivolous filings by him.  In the past six weeks, Annamalai has filed nineteen motions, pleadings, or other documents in this matter.  Many are voluminous, redundant, and even harassing—asserting claims and arguments that were already dismissed by other courts.

This Court is aware that Annamalai has been declared a vexatious litigant in Texas and Georgia based on sixty (60) federal lawsuits and forty (40) state lawsuits he has filed.  (*See* Doc. 3, ¶ 5) (citing *Annamalai v. Sivanadiyan*, No. CV H 17-0025, 2017 WL 633490, at *1 (S.D. Tex. Feb. 15, 2017), *aff'd* 713 F. App'x 409 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 425 (2018).  Annamalai "struck out" by filing well over three lawsuits that were dismissed as frivolous, malicious, or meritless under 28 U.S.C. § 1915(g) before bringing this suit.  *Id*.  Defendants also

highlighted a filing injunction imposed against Annamalai in the Amended Judgment and Commitment Order, entered in the Northern District of Georgia on August 27, 2021, prohibiting Annamalai from filing "frivolous, abusive, or malicious lawsuits" against "attorneys, government agents, the jury, and court personnel involved in the criminal case." *See United States v. Annamalai*, No. 13-cr-437-TCB-CMS (N.D. Ga.) (Doc. 986). He stands **WARNED** that pursuit of his claims in violation of this, or any other, Order may subject him to additional sanctions.

### Disposition

**IT IS ORDERED** that the Complaint (Doc. 1-1) is **DISMISSED without prejudice** under the doctrine of derivate jurisdiction. Defendants' Motion to Stay Proceedings (Doc. 3) filed April 12, 2023 is construed as a request for additional time to brief this issue and is **GRANTED** for good cause shown. *See* FED. R. CIV. P. 6(b)(1)(A)-(B) (authorizing court to extend time for taking certain action or filing certain motions for good cause).

**IT IS ORDERED** that Co-Plaintiff Parvathi Sivanadiyan's Motion to Withdraw (Doc. 12) is **GRANTED**. Parvathi Sivanadiyan is **DISMISSED** from this action, and the Clerk's Office is **DIRECTED** to **TERMINATE** this person as a plaintiff in CM/ECF.

**IT IS ORDERED** that all other pending motions (Docs. 8-12, 17, 19-21, 24, 26, and 29) are **TERMINATED**.

If Annamalai wishes to appeal this Order, he may file a notice of appeal with this Court within sixty (60) days of the entry of judgment. FED. R. APP. P. (4)(a)(1)(B). If he does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999). He must list each of the issues he intends to appeal in the notice of appeal. Moreover, if the appeal is found to be nonmeritorious, he may incur a "strike." A proper and timely motion filed pursuant to Federal

Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED:  6/2/2023**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**
